UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  -v-<br><br>GEORGE GRAHAM,<br><br>                              Defendant. | No. 17 Cir. 663 (RA) (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the motion of the United States of America (the "Government") for an order directing the Clerk of the Court to apply $200,000 (the "Security") currently held in the Court's registry to secure Defendant George Graham's appearance bond (the "Bond") to the outstanding amount of restitution that Mr. Graham owes pursuant to the judgment dated May 1, 2019 (Dkt. No. 36 (the "Judgment")). (Dkt. No. 65 (the "Motion")).[1] Mr. Graham opposed the Motion, and on October 9, 2025, the Court held a hearing on the Motion. (Dkt. Nos. 79 (the "Opposition"); 90; 93; 94; 95; 101).

As further explained below, the Motion is HELD IN ABEYANCE pending further submissions and another hearing.

---

[1] The Honorable Ronnie Abrams referred the Motion, which is non-dispositive, to the undersigned. (Dkt. No. 87).

## II. BACKGROUND

### A. Initial Proceedings

On April 28, 2017, Mr. Graham was arrested based on a complaint dated April 21, 2017 charging him with conspiracy to commit access device fraud, access device fraud, and aggravated identity theft in violation of 18 USC §§ 1028A, 1029(a)(2), and 2. (Dkt. Nos. 1 (the "Complaint"); 7). At his initial presentment before the Honorable Kevin Nathaniel Fox, the Court detained Mr. Graham based on risk of flight. (Dkt. No. 4). See 18 U.S.C. § 3142(e)(1). Bradley Henry, Esq., represented Mr. Graham at the presentment and thereafter until the date of his release from custody in 2020, as set forth below. (Dkt. Nos. 3; 61).

On June 1, 2017, the Honorable Barbara C. Moses accepted the parties' proposed bail package permitting Mr. Graham to be released on the conditions that he: (1) post a bond, co-signed by three financially responsible persons, in the amount of $500,000.00 secured by $200,000.00 in cash; (2) be subject to home detention with strict pretrial supervision and electronic monitoring; (3) surrender all passports and travel documents and make no new applications for such documents; and (4) restrict his travel to the Southern and Eastern Districts of New York. (Dkt. No. 7 at 1 (the "Bail Conditions")). The same day, Mr. Graham signed the Bond, which specified that it was secured by $200,000 in cash, and was released from custody. (Dkt. No. 8 at 1–2). In signing the Bond, Mr. Graham declared:

> *Ownership of the Property.* I, the defendant – and each surety – declare under penalty of perjury that:
> (1) all owners of the property securing this appearance bond are included on the bond;
> (2) the property is not subject to claims, except as described above; and
> (3) I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

> *Acceptance*.  I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me.  I agree to this Appearance Bond.
> I, the defendant – and each surety – declare under penalty of perjury that this information is true.  (See 28 U.S.C. § 1746.)

(Dkt. No. 72-4 at 3 (the "Bond Declarations")).

On June 8, 2017, an individual named Valerie Tsesarenko delivered to the Clerk of the Court a check drawn on TD Bank dated June 7, 2017 in the amount of $200,000.00 on Mr. Graham's behalf as security for the Bond (the "Security").  (Dkt. entry dated June 8, 2017; Dkt. No. 71-1).  The three financially responsible persons who co-signed the Bond and swore to the Bond Declarations were Amanda Evans[2] and Christian Graham both on June 9, 2017, and Natasha Bent ("Ms. Bent") on June 10, 2017 (the "FRPs").  (Dkt. No. 72-4 at 3).

### B. Change of Plea and Sentencing

On October 27, 2017, the Government filed a five-count information, which contained the charges set forth in the Complaint as well as one count of bank fraud in violation of 18 U.S.C. §§ 1344 and 2, and one count of possession of fraudulent immigration papers in violation of 18 U.S.C. § 1546.  (Dkt. No. 16 (the "Information")).  The same day, Mr. Graham signed a waiver of indictment and at his arraignment before Judge Abrams, entered a plea of not guilty.  (Dkt. entry dated Oct. 27, 2017).  On December 14, 2017, Mr. Henry, Mr. Graham's defense counsel, informed the Government that Mr. Graham planned to "sign over the $200[,000] of bail money immediately upon pleading[,]" and requested that Mr. Graham be permitted to pay "the remaining [$]104[,000] on or before the day of sentencing, as opposed to 30 days after the plea."

---

[2] It is undisputed that Amanda Graham and Amanda Evans are the same person, Mr. Graham's wife, whom we refer to as Amanda.  (See Dkt. Nos. 70 at 2 n.2; 101 at 6:19–7:3).

3

(Dkt. No. 72-6 at 3). The Government declined to agree to this proposal noting that Mr. Graham "doesn't have a right to be using the money in the meantime[]" before his sentencing. (Id.)

On January 5, 2018, Mr. Graham pled guilty to each of the five counts in the Information. (Dkt. Entry dated Jan. 5, 2018). At the conclusion of the plea allocution, Judge Abrams directed Mr. Graham to pay "within the next 30 days some of the restitution" and noted the "agree[ment] that we could apply t[he] $200,000 [i.e., the Security] towards the restitution amount." (Dkt. No. 72-7 at 21). Neither Mr. Henry nor Mr. Graham objected to that statement on the record. (See id.) The Security could not be applied to the restitution at that time, however, because Mr. Graham was still released subject to the Bail Conditions and the Security remained in place to secure his appearance and compliance with those conditions. (Dkt. No. 70 at 4 n.4). Following a bail review hearing on December 19, 2018, Judge Abrams denied Mr. Graham's request to modify the Bail Conditions. (Dkt. Nos. 19; 20; 25; Dkt. entry dated Dec. 19, 2018).

On May 1, 2019, Judge Abrams entered the Judgment sentencing Mr. Graham, pursuant to his guilty plea, to a term of imprisonment of one year and one day on all counts to run concurrently, a term of supervised release of three years on all counts to run concurrently, and a special assessment of $500.00. (Dkt. Nos. 36; 39 at 22). As part of Mr. Graham's sentence, Judge Abrams also entered a consent preliminary order of forfeiture/money judgment, which Mr. Graham executed, in the amount of $304,788.50 (Dkt. No. 34 (the "Forfeiture Order")), as well as an order directing Mr. Graham to pay $429,025.84 (the "Restitution Amount") to the victims of the offenses in Counts One through Four of the Information. (Dkt. No. 35 (the "Restitution Order")). The Restitution Order provided that Mr. Graham's liability for the Restitution Amount was joint and several with any other defendant ordered to make restitution

4

for the offenses in the matter and "shall continue unabated until either" he paid the full Restitution Amount "or every victim has been paid the total amount of his loss from all the restitution paid by [Mr. Graham] and co-defendants in this matter." (Id. at 1). On May 14, 2019, Mr. Graham filed a notice of appeal from the Judgment. (Dkt. No. 38). On June 13, 2019, a check dated April 12, 2019 in the amount of $6,674.25 was deposited into the Asset Forfeiture Fund and applied to the amount Mr. Graham owed under the Forfeiture Order, leaving an outstanding balance of $298,114.25. (Dkt. No. 72 ¶ 3; see Dkt. No. 72-2 at 4). The Restitution Amount remains unpaid and is accruing interest at 2.37% pursuant to 18 U.S.C. § 3612(f). (Dkt. No. 67 ¶¶ 6–7).

On July 22, 2019, Judge Abrams revoked the Bail Conditions and ordered Mr. Graham remanded to the custody of the United States Marshals Service. (Dkt. No. 44). Judge Abrams denied Mr. Graham's subsequent motion for release pending appeal. (Dkt. Nos. 51; 54).

On April 14, 2020, Judge Abrams granted Mr. Graham's motion for a sentence reduction pursuant to 18 U.S.C. § 3852(c)(1)(A), reduced his prison sentence to time served, ordered his release from custody, and placed him on supervised release on the terms set forth in the Judgment. (Dkt. Nos. 55; 56; 60; 62). On June 3, 2020, the United States Court of Appeals for the Second Circuit dismissed his appeal as moot. (Dkt. No. 63).

Following his release, Mr. Graham was removed to Ghana, where he currently resides. (Dkt. No. 94).

### C. The Motion

On April 29, 2025, Mr. Graham sent an email to the Government seeking the return of "my cash bail" payable by check to his wife, Amanda. (Dkt. Nos. 72-8 at 2). The next day, Amanda

5

sent an email to the Government seeking the "return of cash bail for George Graham[,]" to which she attached an affidavit from Mr. Graham attesting that he granted to Amanda "permission . . . to handle all matters concerning retrieving my Cash Bail in the amount of $200,000." (Dkt. No. 72-9 at 2, 4).[3]

On June 5, 2025, the Government filed the Motion, asking the Court to apply the Security to the Restitution Amount pursuant to 28 U.S.C. § 2044 and the Mandatory Victim Restitution Act of 1995, 18 U.S.C. § 3611 (the "MVRA"). (Dkt. Nos. 65–67). In the Motion, the Government notes that, as of June 2, 2025, Mr. Graham had paid $50 toward his $500 special assessment and had made no payment as to the Restitution Amount. (Dkt. Nos. 66 at 3; 67-1).[4] The Government therefore asked the Court to apply the Security to the Restitution Amount. (Dkt. No. 66 at 3–4).

On June 17, 2025, Judge Abrams noted the receipt of "emails from Mr. Graham and his wife, which, among other things, assert[ed] that several other persons contributed funds to his [B]ond and retain a property interest in those funds[,]"and directed the Government to respond. (Dkt. No. 69 at 1). In the emails, Mr. Graham and his wife contended, inter alia, that Ms. Tsesarenko's delivery of the Security to the Clerk of the Court suggested fraud by the Government. (Id. at 2, 6, 30, 44). In an email dated May 30, 2025, Amanda asserted that "my family and I gathered bail money in the amount of $200,000." (Id. at 45).

In a response dated June 27, 2025, the Government explained that, in the summer of 2017, Ms. Tseserenko, then a law student, interned in the office of an attorney who shared office

---

[3] A notary public in Florida notarized the Affidavit and indicated that it was "[p]erformed via communication technology." (Dkt. No. 72-9 at 4).
[4] Mr. Graham's obligation to pay the remainder of the special assessment expired on May 1, 2024, five years after the Judgment. See 18 U.S.C. § 3013(d).

6

space with Mr. Henry.  (Dkt. Nos. 70 at 1; 71 ¶ 2).  On June 8, 2017, Ms. Tsesarenko complied with a request to assist Mr. Henry by delivering the Security to the Clerk of the Court and "present[ing] a check in the amount of $200,000 on behalf of George Graham to the clerk on duty."  (Dkt. No. 71 ¶ 3).  Ms. Tsesarenko presented identification, received a receipt, and "[o]ther than bringing the check, [] had no involvement in [Mr.] Graham's matter."  (Dkt. Nos. 71 ¶ 3; 71-1).  More than five years later, in October 2022, Ms. Tsesarenko became an Assistant United States Attorney in the office of the United States Attorney for the District of Columbia.  (Dkt. No. 71 ¶ 1).

The Government also submitted emails that the Assistant United States Attorneys who worked on Mr. Graham's case received from Mr. Graham and his family members.  (Dkt. Nos. 72-1–72-6).  In one of these emails, Amanda asserted that "Mr. Graham has nothing to do with this at all" and that she was "the one who requested the money that my family, myself and the church put together."  (Dkt. No. 72-5 at 2).

On July 22, 2025, Judge Abrams granted Mr. Graham's request for the appointment of counsel to represent him in connection with the Motion and Camille Abate, Esq., the Criminal Justice Act attorney on duty, entered an appearance on Mr. Graham's behalf.  (Dkt. Nos. 73; 75; 76; 78; Dkt. entry dated July 22, 2025).  On August 10, 2025, Ms. Abate submitted the Opposition on behalf of Mr. Graham.  (Dkt. No. 79).  In the Opposition, Mr. Graham argued that the Security did not "belong to" him, and therefore, there was no agreement to "sign[] over" the Security to apply to the Restitution Amount.  (Id. at 1–3).  Attached to the Opposition were statements from two "of the three people who collected the funds to secure the [B]ond."  (Dkt. No. 79 at 2).  The first statement was an affidavit from Ms. Bent, who declared that she had been "appointed as

one of the trustees to collect funds from other members [of Mr. Graham's church] in support of [Mr.] Graham's bail[,]" and that she, Amanda, and Christian Graham "raise[d] $200,000 cash[.]" (Dkt. No. 79 at 6 (the "Bent Affidavit")).  Ms. Bent asserted that Mr. Henry had informed her "that as long as Mr. Graham completed his bail obligations, the funds would be returned[.]"  (Id.)  Ms. Bent contended that she was "one of the THREE property owners" and asked that the Security "be released to Amanda Evans, as she is the lead trustee regarding this matter."  (Id.)  The second statement is a typed, unsigned, un-notarized statement from Gladys Graham, the widow of Christian Graham, attesting that he, Amanda, and Ms. Bent collected funds "from family and church members[,]" who had "made many attempts over the years to retrieve the money back for the people in the church but [were] denied."  (Id. at 8).  Ms. Graham asked that the Security "be returned back to Amanda [] as she is responsible for distributing the money back to everyone."  (Id.)  Separately, Mr. Graham filed a declaration dated July 30, 2025, in which he declared under penalty of perjury that:

> I have never been in ownership of the property in question ($200,000 cash bail) that was put up by my family and church for securing the bond agreement.  I do not have any property interest in the $200,000 cash bond that was put up for my bail.  I have never sought to recover the funds for myself, nor have I ever asserted an ownership claim over the funds to the clerk of the court or any other entity.

(Dkt. No. 85 (the "Declaration")).

On September 5, 2025, the Government filed a reply, in which it argued that no written agreement was required to permit the Security to be applied to the Restitution Amount, which is permissible under § 2044 and the MVRA.  (Dkt. No. 83 (the "Reply")).  On September 12, 2025, Judge Abrams entered on the docket additional letters from Mr. Graham and Amanda reiterating

8

that the Government had engaged in fraud and requesting that the Security be returned to Amanda. (Dkt. No. 86).

After the Court granted Ms. Abate's request to be relieved as Mr. Graham's counsel due to "irremediable damage to the attorney/client relationship," the Court appointed new CJA counsel, Eylan Schulman, who entered an appearance on Mr. Graham's behalf. (Dkt. Nos. 84; 88; 89).[5]

On October 9, 2025, the Court held the Hearing, at which Mr. Schulman appeared on Mr. Graham's behalf and Mr. Graham, who currently resides in Ghana, appeared telephonically. (Dkt. Nos. 90; 93; 94; 95; 101 at 3:8–15). Despite outreach from Mr. Graham's counsel, neither Amanada, Gladys Graham, Ms. Bent, nor any other contributor of funds to the Security appeared at the Hearing. (See Dkt. No. 101 at 10:18–25, 14:9–11). Aside from Mr. Graham, no one asserting ownership over the Security appeared at the Hearing.

### III. DISCUSSION

#### A. Legal Standard

Under 18 U.S.C. § 3663, a sentencing court is authorized to impose a restitution order on a criminal defendant. 18 U.S.C. § 3663(a)(1)(A). As is relevant here, the MVRA provides that "an order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code[.] The lien arises on the entry of judgment and continues for 20 years

---

[5] We note that, despite orders directing Mr. Graham to cease sending emails to Judge Abrams' chambers and to direct all correspondence through his assigned counsel, Mr. Graham continued to do so using "offensive and harassing language[,]" so Judge Abrams blocked his email communications and warned him that, if he continued to contact Chambers or the Clerk's Office by email or phone, "the appropriate authorities may be notified." (Dkt. Nos. 73; 77; 91).

or until the liability is satisfied, remitted, set aside, or is terminated[.]" 18 U.S.C. § 3613(c). See United States v. Brumer, 405 F. App'x 554, 555 (2d Cir. 2011) (summary order). The lien provision of the MVRA represents Congress's judgment that "the Government ha[s] a legitimate interest in ensuring that [a] valid restitution order imposed as part of [a defendant's] sentence [is] satisfied." Lavin v. United States, 299 F.3d 123, 128 (2d Cir. 2002).

To enable the Government to collect outstanding payments that a defendant owes, section 2044 provides:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.

28 U.S.C. § 2044. The Second Circuit has approved the application of bail bond funds to satisfy a defendant's outstanding restitution and special assessment obligations. See Brumer, 405 F. App'x at 556. The Government bears the burden of proving by a preponderance of the evidence that the bond security "belong[s] to" the defendant. See United States v. Hills, No. 16 Cr. 329 (SL), 2022 WL 1127888, at *3 (N.D. Ohio Apr. 15, 2022) (collecting cases); United States v. Gonzalez, No. 11 Cr. 80211 (KAM) (WM), 2013 WL 654918, at *3–4 (S.D. Fla. Feb. 21, 2013) (same).

Section 2044 does not extend to funds that a third party owned and posted in support of a defendant's bond. See United States v. Ware, Nos. 04 Cr. 1224 (ER) & 05 Cr. 1115 (ER), 2021 WL 3188248, at *1–2 (S.D.N.Y. July 28, 2021) (declining to apply to defendant's outstanding

criminal monetary penalties bond amount that defendant's mother had posted and later bequeathed to his siblings); United States v. Equere, 916 F. Supp. 450, 452 (E.D. Pa. 1996) (explaining that § 2044 "applies only to 'money belonging to' the defendant, which has been 'deposited by' the defendant or 'on behalf of the defendant', and does not apply to money owned by a third party"). Despite the mandatory language—"the court shall order . . ."—some courts have interpreted § 2044 as codifying "district courts' long-held discretion to apply a defendant's bail funds toward judgments, rather than a command that such payments be applied." Ware, 2021 WL 3188248, at *1 (collecting cases).

Also relevant to the Motion is Federal Rule of Criminal Procedure 46(g):

> **Exoneration**. The court must exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture. The court must exonerate the surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody.

Fed. R. Crim. P. 46(g). The defendant or other owner of property posted as security for a defendant's bond may move for exoneration under this provision. See Brumer, 405 F. App'x at 555 (denying motion of defendant's wife to exonerate $25,000 she had posted for his bond where those funds derived from marital home that defendant had purchased with proceeds of his criminal activities and was therefore subject to § 2044); United States v. Begleiter, 38 F. App'x 80, 82 (2d Cir. 2002) (summary order) (reversing denial of defendant's motion to exonerate his bail after he fulfilled conditions of his bond). A person other than the defendant asserting ownership must provide documentary evidence demonstrating ownership. See, e.g., Ware, 2021 WL 3188248, at *2 (discussing documentary evidence demonstrating defendant's mother's ownership of portion of bond funds).

B. **Application**

The key issue before the Court is the ownership of the Security. (Dkt. No. 101 at 4:12–21, 11:15–17). To demonstrate that the Security "belong[s] to" Mr. Graham under § 2044, the Government points to three pieces of evidence. (Id. at 4:22–7:21).

First, the Government points to Mr. Graham's agreement, when he executed the Bond, to the Bond Declarations, in which he declared his "ownership" of the Security. (Dkt. No. 8 at 2). The Government notes that Mr. Graham agreed to the Bond Declarations on June 1, 2017 and the Security was posted with the Court on June 8, 2017, before the FRPs agreed to the Bond Declarations when they signed the Bond on June 9 and 10, 2017. (Dkt. No. 101 at 4:25–5: 16; see Dkt. No. 72-4 at 3 (indicating that Amanda and Christian Graham signed on June 9, 2017 and Ms. Bent signed on June 10, 2017)). From this evidence, the Government infers that the Security "belonged to" Mr. Graham under § 2044. (Dkt. No. 101 at 7:17–21). Mr. Graham counters that the fact that the Security was posted before the FRPs signed the Bond does not undermine their assertion of ownership. (Id. at 28:9–21).

Second, the Government points to Mr. Graham's January 2018 plea allocution, during which the Government described, and Judge Abrams approved, without objection from Mr. Graham or his counsel, an agreement to apply the Security toward the Restitution Amount. (Dkt. No. 101 at 5:17–6:14; see Dkt. No. 72-7 at 21). Mr. Graham counters that the Government rejected Mr. Graham's counsel's proposal so there was no written agreement to apply the Security to the Restitution Amount, and, even if such an agreement existed, the Government did not take any action in the more than seven years since Mr. Graham's plea. (Dkt. No. 101 at 18:9–24; see Dkt. No. 72-6 at 3).

12

Third, the Government points to emails from Mr. Graham and Amanda describing the Security as belonging to Mr. Graham. (Dkt. No. 101 at 7:5–16; see Dkt. No. 72-8 at 2 (Mr. Graham requesting "return of my cash bail") (emphasis added); 72-9 at 2 (Amanda requesting "return of cash bail for George Graham") (emphasis added). Mr. Graham responds that there is no presumption that bail funds belong to a defendant. (Dkt. No. 101 at 19:14–16; see Dkt. No. 79 at 4 citing United States v. Jones, 602 F.2d 687, 688 (5th Cir. 1979)). Mr. Graham also suggests that the Government's seven-year delay in bringing the Motion gives rise to the inference that the Government also believed that the Security did not "belong[] to" Mr. Graham. (Dkt. No. 101 at 13:6–10, 30:6–20).

In sum, the Government's evidentiary showing that the Security "belong[s] to" Mr. Graham under § 2044 is substantial. Mr. Graham's execution of the Bond Declaration asserting that he was the owner of the Security, Mr. Graham's counsel's offer at the plea allocution to apply the Security to the Restitution Amount, and Mr. Graham's and Amanda's statements in April 2025 that the Security belonged to Mr. Graham all point to the conclusion that the Security "belong[s] to" Mr. Graham under § 2044.

In contrast, not until the end of May 2025 did Amanda assert that any of the Security belonged to herself and her family, and not until after the Government filed the Motion did Amanda, Gladys Graham, and Ms. Bent suggest that church members had contributed to, and therefore might have an ownership interest in, the Security. (Dkt. Nos. 69 at 45; 79 at 6, 8). Only Ms. Bent has attested under penalty of perjury to being a "property owner[]" of an unspecified portion of the Security. (Dkt. No. 79 at 6). No ledger indicating the identities of individuals who contributed to the Security has been submitted. (Dkt. No. 101 at 29:4–15). And, as noted above,

13

while the Court has received emails from Mr. Graham and Amanda and the statements from Ms. Bent and Gladys Graham, no motion under Rule 46(g) or other application to exonerate the Security has been filed with the Court.

It is possible, however, that Amanda and Mr. Graham's family and friends who may have contributed to the Security were unaware of Rule 46(g) and the need to file with the Court a written application supported by credible evidence of their ownership of the Security. (See Dkt. No. 101 at 13:10–16:7 (Mr. Graham's counsel requesting permission to submit a motion to exonerate the Security)). Accordingly, out of an abundance of caution, the Court will hold the Motion in abeyance and will provide one final opportunity for any individual asserting ownership in the Security—the $200,000 in cash posted in support of Mr. Graham's release on bail in June 2017—to file with the Court a written request under Rule 46(g), supported by admissible evidence such as either an affidavit sworn before a notary public or a declaration under the penalty of perjury pursuant to 28 U.S.C. § 1746.[6] See Williams v. Elzy, No. 00 Civ. 5382 (HBP), 2003 WL 22208349, at *5 (S.D.N.Y. Sept. 23, 2003) (noting that declarations under penalty of perjury under 28 U.S.C. § 1746 "have the same evidentiary weight as affidavits"). In addition, any person filing a request under Rule 46(g) must appear and be prepared to testify under oath before the Court at a second hearing on the date set forth below (the "Second Hearing").

Any person who does not (1) file a written request under Rule 46(g) that meets the requirements set forth above, and (2) appear before the Court at the Second Hearing will be deemed to have waived any claim to ownership of any portion of the Security. Cf. Stone v.

---

[6] A declaration executed under 28 U.S.C. § 1746 must state "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." 28 U.S.C. § 1746(2).

Pamoja House, 111 F. App'x 624, 626 (2d Cir. 2004) (finding that plaintiff abandoned any interest in property that he failed to timely retrieve).  If no written requests are filed and no person appears at the Second Hearing, the Government's Motion **will** **be** **granted** and the Security **will** **be** **applied** to the Restitution Amount.

## IV. CONCLUSION

For the reasons set forth above, the Motion is **HELD IN ABEYANCE** pending further submissions and a Second Hearing before the Court as outlined below.

(1) By **Wednesday, November 26, 2025**, any person or entity claiming ownership of the Security—the $200,000 cash posted in support of Mr. Graham's bond in June 2017—in whole or in part, shall file a motion to exonerate, that is, a request for return of the Security pursuant to Federal Rule of Criminal Procedure 46(g) (a "Rule 46(g) Motion"). Any Rule 46(g) Motion must be supported by admissible evidence such as either an affidavit sworn before a notary public or a declaration under the penalty of perjury pursuant to 28 U.S.C. § 1746.  **Failure to file a Rule 46(g) Motion with supporting admissible evidence will be deemed a waiver of any claim to ownership of some or all of the Security**.

(2) By **Wednesday, December 10, 2025**, the Government shall respond to any Rule 46(g) Motion.

(3) On **Wednesday, December 17, 2025 at 10:00 a.m. ET** in Courtroom 18A, 500 Pearl St, New York, New York, the Court will hold the Second Hearing.  Any person or entity who has filed a Rule 46(g) Motion **must** attend the Second Hearing and be prepared to testify under oath regarding their asserted ownership interest in the Security.

**<u>Failure to appear at the Second Hearing will be deemed a waiver of any claim to ownership of some or all of the Security.</u>**

Dated:     New York, New York
           October 29, 2025

SO ORDERED.

_____
**SARAH L. CAVE**
**United States Magistrate Judge**