UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

GEORGE GRAHAM,

Defendant.

No. 17 Cr. 663 (RA) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the motion of non-party Amanda Evans ("Ms. Evans") for release to her as a third-party surety of $200,000.00 currently held in the Court's registry to secure Defendant George Graham's ("Mr. Graham") appearance bond (the "Security"). (Dkt. No. 125 (the "Motion")). The United States of America (the "Government") opposed the Motion and cross-moved for an order directing that the Security be applied to Mr. Graham's outstanding restitution obligation. (Dkt. Nos. 140–43 (the "Cross-Motion," with the Motion, the "Motions")). Mr. Graham opposed the Cross-Motion. (Dkt. No. 146).

For the reasons set forth below, the Motion is **DENIED** and the Cross-Motion is **GRANTED**.

## II. BACKGROUND

### A. Mr. Graham's Criminal Proceedings

For a description of Mr. Graham's criminal proceedings, we incorporate by reference the summary in United States v. Graham, No. 17 Cr. 663 (RA) (SLC), 2025 WL 3022327 (S.D.N.Y. Oct. 29, 2025) ("Graham I"). See 2025 WL 3022327, at *1–3.

**B. The First Motion**

For a description of the events and filings related to the Government's first motion to apply the Security to Mr. Graham's outstanding restitution payment (Dkt. Nos. 65–67 (the "First Motion")), including the two hearings the Court held, we incorporate by reference the summary in Graham I and United States v. Graham, No. 17 Cr. 663 (RA) (SLC), 2026 WL 42384 (S.D.N.Y. Jan. 7, 2026) ("Graham II"). See Graham I, 2025 WL 3022327, at *3–5; Graham II, 2026 WL 42384, at *1–3.[1]

On January 7, 2026, the Court denied the First Motion without prejudice, finding that the three pieces of evidence that the Government put forth to show that the Security belonged to Mr. Graham were insufficient under 28 U.S.C. § 2044.[2] (Dkt. No. 123). The Court also noted that although no one had appeared to claim ownership of the Security at the First or Second Hearings, or filed a motion to exonerate pursuant to Federal Rule of Criminal Procedure 46(g), Mr. Graham's family and friends asserted their interests in the Security through statements that were "too ambiguous to warrant releasing the funds" to them, but "nevertheless cast[ed] further doubt on the Government's contention that Mr. Graham is the owner of" the Security. Graham II, 2026 WL 42384, at *6.

[1] Unless otherwise stated, we use capitalized terms as defined in Graham II.

[2] The three pieces of evidence were: (i) Mr. Graham's agreement to the Bond Declarations in which he declared ownership of the Security; (ii) Mr. Graham's January 2018 plea allocution during which the Government described an agreement to apply the Security to Mr. Graham's outstanding restitution obligation; and (iii) emails from Mr. Graham and Ms. Evans describing the Security as belonging to Mr. Graham. Graham II, 2026 WL 42384, at *5–6.

**C. The Motion and the Cross-Motion**

Despite her failure to appear at, or file a Rule 46(g) motion before, the First and Second Hearings, on January 27, 2026, Ms. Evans filed the Motion claiming ownership of the entirety of the Security. (Dkt. No. 125). Ms. Evans argues that she used her own personal funds to post the Security in June 2017. (Id. at 2). Accompanying the Motion are declarations from Ms. Evans dated January 25, 2026, Natasha Bent ("Ms. Bent") dated January 10, 2026, and Gladys Graham ("Ms. Graham") dated January 12, 2026,[3] requesting that the Security be released to Ms. Evans. (Dkt. No. 125 at 5 (the "Evans Declaration"), 6 (the "Second Bent Declaration"), 7 (the "Second Graham Declaration")).

On April 10, 2026, the Government filed its opposition and the Cross-Motion requesting that the Court apply the Security to Mr. Graham's outstanding restitution payment. (Dkt. Nos. 140–43). In opposition to the Motion, the Government argues that Ms. Evans failed to support her assertions of ownership of the Security with any corroborating documentation or any specificity as to the extent to which she, Ms. Bent, or Ms. Graham are "property owners" of the Security. (Id. at 9–12). In the Cross-Motion, the Government argues that newly obtained certified bank records from TD Bank for Mr. Graham from 2017 (the "Bank Records") justify application of the Security to Mr. Graham's outstanding restitution payment. (Id. at 13–15; see Dkt. No. 143-1). The Government obtained the Bank Records by serving TD Bank with a subpoena using Mr. Graham's date of birth and Social Security Number. (Dkt. No. 143 ¶ 3). The Bank

[3] In support of Mr. Graham's opposition to the First Motion, Ms. Bent previously submitted a signed and notarized declaration dated August 6, 2025 stating that she contributed her own funds to the Security and Ms. Graham submitted an unsigned letter dated June 28, 2025 asking that the Security be returned to Ms. Evans. (Dkt. No. 79 at 6 (the "First Bent Declaration"), 8 (the "First Graham Declaration")).

Records list Mr. Graham as the only "owner" of his bank account. (Dkt. No. 143-1 at 3). In addition, the Government noted that the Bank Records were sent to two addresses associated with Mr. Graham. (July 7 Tr. at 5:5–13).[4] According to the Bank Records, in the statement period for March 26, 2017 through April 25, 2017, the beginning balance on Mr. Graham's account was over $500,000.00, a deposit of $531,000.00 having been made on March 16, 2017 (more than five weeks before Mr. Graham's arrest). (Dkt. No. 143-1 at 9, 13). See Graham I, 2025 WL 3022327, at *1. The Bank Records also show that, on June 7, 2017, Mr. Graham wrote and signed a withdrawal slip for $200,000.00, following which TD Bank issued a certified check for $200,000.00 payable to "United States District Court Clerk[.]" (Dkt. No. 143-2 at 19–20). In the statement period for May 26, 2017 through June 25, 2017, the only deposit of funds into Mr. Graham's account was $1,399.65 from "State Farm." (Dkt. No. 143-1 at 22). The Government attempted to personally serve Ms. Evans with a subpoena seeking documents corroborating her claim that she had paid the Security and seeking her deposition. (Dkt. No. 143 ¶ 6). The process server was unable to personally serve Ms. Evans with the subpoena but posted it on Ms. Evans's front door and sent it by mail. (Id.) Ms. Evans did not respond to the subpoena or appear for her deposition. (Id.)

On April 13, 2026, Ms. Evans filed a reply in further support of the Motion. (Dkt. No. 145). That same day, Mr. Graham filed an opposition to the Cross-Motion. (Dkt. No. 146). On April 27, 2026, Ms. Evans filed additional declarations by Ms. Bent dated April 20, 2026 and

---

[4] As of the date of this Opinion & Order, the transcript for the oral argument on July 7, 2026 (the "July 7 Transcript") has been prepared, and a courtesy copy provided to the Court, but has not yet been docketed. We refer to the July 7 Transcript as "July 7 Tr." and cite the relevant page numbers.

Ms. Graham dated April 25, 2026 in further support of the Motion, but she has not filed an opposition to the Cross-Motion. (Dkt. No. 149 at 1 (the "Third Bent Declaration"), 2 (the "Third Graham Declaration")).

On July 7, 2026, the Court heard oral argument on the Motions. (Dkt. Nos. 150; 154; July 7 Tr.; Minute Entry dated July 7, 2026 (the "Third Hearing")). The Court had directed Ms. Evans and any other person wishing to be heard on the Motions to appear in person. (Dkt. No. 150). Counsel for the Government appeared in person at the Third Hearing, but Ms. Evans did not. (July 7 Tr. at 2:1–18). At 10:45 a.m. ET, 45 minutes after the Third Hearing was due to commence and nearly 30 minutes after the Third Hearing ended, Ms. Evans contacted the Court seeking dial in information for the Third Hearing. Out of an abundance of caution, the Court scheduled a fourth and final hearing by telephone. (Dkt. Nos. 155; 156; Minute Entry dated July 16, 2026 (the "Fourth Hearing")). On July 16, 2026, the Court held the Fourth Hearing, at which counsel for the Government appeared. (Dkt. No. 156 at 2; Minute Entry dated July 16, 2026). The Court waited several minutes for Ms. Evans to participate in the Fourth Hearing, but she did not join. (Dkt. No. 156 at 4–5). The Court concluded the Fourth Hearing and indicated that this Opinion and Order would issue in due course. (Id. at 6).

## III. DISCUSSION

### A. Legal Standards

#### 1. Federal Rule of Criminal Procedure 46(g)

Federal Rule of Criminal Procedure 46(g) provides:

> **Exoneration**. The court must exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture. The court must exonerate the surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody.

Fed. R. Crim. P. 46(g). The defendant or other owner of property posted as security for a defendant's bond may move for exoneration under this provision. See United States v. Brumer, 405 F. App'x 554, 555 (2d Cir. 2011) (summary order) (denying motion of defendant's wife to exonerate $25,000 she had posted for his bond where those funds derived from marital home that defendant had purchased with proceeds of his criminal activities and was therefore subject to § 2044); United States v. Begleiter, 38 F. App'x 80, 82 (2d Cir. 2002) (summary order) (reversing denial of defendant's motion to exonerate his bail after he fulfilled conditions of his bond). A person other than the defendant asserting ownership must provide documentary evidence demonstrating ownership. See, e.g., United States v. Ware, Nos. 04 Cr. 1224 (ER) & 05 Cr. 1115 (ER), 2021 WL 3188248, at *2 (S.D.N.Y. July 28, 2021) (discussing documentary evidence demonstrating defendant's mother's ownership of portion of bond funds).

**2. 18 U.S.C. § 3663 and 28 U.S.C. § 2044**

Under 18 U.S.C. § 3663, a sentencing court is authorized to impose a restitution order on a criminal defendant. 18 U.S.C. § 3663(a)(1)(A). As is relevant here, 18 U.S.C. § 3613 provides that "an order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code[.] The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated[.]" 18 U.S.C. § 3613(c). See Brumer, 405 F. App'x at 555. This lien provision represents Congress's judgment that "the Government ha[s] a legitimate interest in ensuring that [a] valid restitution order imposed as part of [a defendant's] sentence [is] satisfied." Lavin v. United States, 299 F.3d 123, 128 (2d Cir. 2002).

To enable the Government to collect outstanding payments that a defendant owes, 28 U.S.C. § 2044 provides:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution or penalty cannot be imposed for the offense the defendant committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.

28 U.S.C. § 2044. The Second Circuit has approved the application of bail bond funds to satisfy a defendant's outstanding restitution and special assessment obligations. See Brumer, 405 F. App'x at 556. The Government bears the burden of proving by a preponderance of the evidence that the Security "belong[s] to" the defendant. See United States v. Hills, No. 16 Cr. 329 (SL), 2022 WL 1127888, at *3 (N.D. Ohio Apr. 15, 2022) (collecting cases); United States v. Gonzalez, No. 11 Cr. 80211 (KAM) (WM), 2013 WL 654918, at *3–4 (S.D. Fla. Feb. 21, 2013) (same).

As the statute makes clear, Section 2044 does not extend to funds that a third party owned and posted in support of a defendant's bond. See 28 U.S.C. § 2044; Ware, 2021 WL 3188248, at *2 (declining to apply to defendant's outstanding criminal monetary penalties bond amount that defendant's mother had posted and later bequeathed to his siblings); United States v. Equere, 916 F. Supp. 450, 452 (E.D. Pa. 1996) (explaining that Section 2044 "applies only to 'money belonging to' the defendant, which has been 'deposited by' the defendant or 'on behalf of the defendant', and does not apply to money owned by a third party"). Despite the mandatory language — "the court shall order . . ." — some courts have interpreted Section 2044 as codifying "district courts' long-held discretion to apply a defendant's bail funds toward judgments, rather

than a command that such payments be applied." Ware, 2021 WL 3188248, at *1 (collecting cases).

**B. Application**

**1. Ms. Evans Has Not Shown Ownership of the Security**

Ms. Evans claims that she used her own personal funds to post the Security and to support her claim has submitted the Evans Declaration and the Second Bent and Graham Declarations. (Dkt. No. 125 at 5–7). Ms. Bent and Ms. Graham also submitted the Third Bent and Graham Declarations claiming that they were listed as sureties in connection with the Security, consenting to the release of the Security to Ms. Evans, and waiving any right to the Security. (Dkt. No. 149). The Government argues that the Second and Third Bent and Graham Declarations are insufficient to corroborate Ms. Evans's claim, noting that they lack any specificity as to the amounts that Ms Evans, Ms. Graham, and Ms. Bent each contributed to the Security and that in any event, Ms. Bent and Ms. Graham lack standing to request release of the Security to Ms. Evans. (Dkt. No. 141 at 11–12).

We agree with the Government that Ms. Evans has not provided sufficient documentation demonstrating her ownership of the Security. As an initial matter, the Evans Declaration lacks any corroboration with documentary evidence and merely states in a conclusory fashion that Ms. Evans posted the Security using her own personal funds. (See Dkt. No. 125 at 5). In addition, the Bank Records directly contradict the Evans Declaration and show that Mr. Graham not only did not receive any funds from Ms. Evans to cover the amount of the Security, but also that he drew the full amount of the Security from existing funds in his account on June 7, 2017. (Dkt. No. 143-1 at 22–24).

The Second and Third Bent and Graham Declarations are equally deficient. As we stated in Graham II, the First Bent and Graham Declarations were "too ambiguous to warrant releasing the funds to Mr. Graham's family and friends under Rule 46(g)." 2026 WL 42384, at *6. As the Government correctly observes, (Dkt. No. 141 at 11), the Second and Third Bent and Graham Declarations are even more vague than the First Bent and Graham Declarations. (See Dkt. Nos. 79 at 6, 8; 125 at 6–7; 149). For example, in the First Bent Declaration, Ms. Bent described her membership at Christ Our Loving Shepherd Church (the "Church") and her responsibility for collecting funds for Mr. Graham's bail on behalf of the Church, but in the Second Bent Declaration, she merely describes herself as "one of the property owners listed on the bond agreement" and requests release of the Security without any further detail or supporting documentation detailing her contribution to the Security. (Compare Dkt. No. 125 at 6, with Dkt. No. 79 at 6). In addition, while the First Bent Declaration was notarized, the Second Bent Declaration is not. (Compare Dkt. No. 125 at 6, with Dkt. No. 79 at 6). Similarly, the First Graham Declaration specified that Ms. Graham was a member of the Church and contributed to the Security, but the Second Graham Declaration merely requests release of the Security to Ms. Evans as "the widow of Christian Graham" without any explanation as to her relationship to Mr. Graham or Ms. Evans and without any detail as to what extent Ms. Evans was a "property owner[]" of the Security. (Compare Dkt. No. 125 at 7, with Dkt. No. 79 at 8). While we recognize that Ms. Evans also submitted the Third Bent and Graham Declarations, in which Ms. Graham and Ms. Bent consented to the release of the Security "under penalty of perjury[,]" the Third Bent and Graham Declarations do not provide any details as to which portion of the Security Ms. Graham or Ms. Bent contributed nor any documentation supporting their claims. (See Dkt. No. 149). And, as

with the Evans Declaration, the Bank Records belie any assertion that Mr. Graham received funds from anyone else to post the Security. (Dkt. No. 143-1 at 22–24).

Accordingly, Ms. Evans has failed to demonstrate her ownership interest in the Security as would warrant release of the Security to her.

**2. The Security Shall be Applied to Mr. Graham's Restitution**

As we stated in Graham I and Graham II, and as is still the case, "[t]he key issue before the Court is the ownership of the Security." Graham I, 2025 WL 3022327, at *6; Graham II, 2026 WL 42384, at *5.

In Graham I, the Government relied on three pieces of evidence that it argued established that the Security belonged to Mr. Graham: (i) Mr. Graham's agreement to the Bond Declarations; (ii) Mr. Graham's plea allocution where the Government described an agreement to apply the Security to the restitution he owed; and (iii) emails from Ms. Evans and Mr. Graham describing the Security as belonging to Mr. Graham. Graham I, 2025 WL 3022327, at *6–7; see Graham II, 2026 WL 42384, at *5–6. In Graham I, we described the Government's showing that the Security belonged to Mr. Graham as "substantial," 2025 WL 3022327, at *7, but in Graham II we found that the Government had not met its burden of demonstrating that the Security belonged to Mr. Graham in light of: (i) Mr. Graham's repeated denial of ownership of the Security; (ii) the absence of an indication that Mr. Graham possessed the funds necessary to post his own bond; and (iii) the statements of Mr. Graham's friends and family that they contributed to the Security. 2026 WL 42384, at *5–6.

The Government now supports the Cross-Motion with newly obtained evidence, i.e., the Bank Records, to establish that Mr. Graham owned the Security under Section 2044.[5] Notwithstanding the Bank Records, Mr. Graham argues that the Government still has not demonstrated that the account is "attributable" to him, that he exercised control over the account, that he was the individual who withdrew the Security from the account, or that the Bank Records are authentic and reliable. (Dkt. No. 146 at 1–10).

The Bank Records indeed do show each of those facts. They demonstrate that, inter alia, Mr. Graham was the only person designated on his bank account, was the only individual to withdraw or deposit money from his account, and wrote and signed a withdrawal slip for $200,000.00, following which TD Bank issued an official check for $200,000.00 payable to "United States District Court Clerk[.]" (Dkt. Nos. 143-1 at 3; 143-2 at 19–20). The Bank Records also show that there was no deposit into his account of funds anywhere near $200,000.00 between his arrest on April 28, 2017 and when he posted the Security on June 7, 2017, and that the balance on his bank account was well over $500,000.00 in March 2017, weeks before his arrest on April 28, 2017. (Dkt. No. 143-1 at 9, 13, 18–20, 22–24); see Graham I, 2025 WL 3022327, at *1. Mr. Graham's denials that the Bank Records are "attributed" to him, (Dkt. No. 146 at 1–5), are unavailing because the Government attests that it used Mr. Graham's date of birth and social security number in the subpoena to TD Bank, provided TD Bank with a copy of the check for the Security, and confirmed that the statements for the Bank Account were sent to addresses associated with Mr. Graham. (Dkt. No. 143 ¶ 3; July 7 Tr. at 5:5–13). Based on the Bank Records,

[5] It goes without saying that it would have been much more efficient had the Government sought and submitted this evidence in connection with the First Motion.

the Government has now established for purposes of Section 2044 that the Security belonged to Mr. Graham at the time he paid it.

Not only do we credit the Bank Records, which show that Mr. Graham had sufficient funds to post the Security himself and show a payment to the U.S. District Court in the exact amount of the Security, but we also take into account the lack of documentation, in the form of a ledger or other contemporaneous documentation showing that Ms. Evans, Ms. Graham, or Ms. Bent delivered any funds to Mr. Graham before he posted the Security as could corroborate the claims of Ms. Evans or anyone else to ownership of the Security. Finally, Ms. Evans's assertion of complete ownership of the Security, (Dkt. No. 125 at 5), is undermined by the previous claims of ownership by Ms. Bent and Ms. Graham that they, along with other Church members, contributed to the Security. (See Dkt. No. 79 at 6, 8). Again, there is no trace of any third-party contributions to Mr. Graham in the Bank Records between his arrest and when he posted the Security. (See Dkt. No. 143-1).

Accordingly, the Government has met its burden of demonstrating that the Security "belong[s]" to Mr. Graham within the meaning of Section 2044 and that the Security should be applied to the outstanding amount that Mr. Graham owes pursuant to the Restitution Order.

**IV. CONCLUSION**

For the reasons set forth above, the Motion is **DENIED** and the Cross-Motion is **GRANTED**. The Clerk of the Court is respectfully directed to release the Security for application to the outstanding Restitution Amount reflected in the Judgment (Dkt. No. 36) and close Dkt. Nos. 125, 140, and 145.

Dated: New York, New York
July 21, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**